**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on February 13, 2008, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: February 13, 2008**

_____
**Arthur I. Harris
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 05-28333 |
| | ) | |
| ENDIA V. HILL, | ) | Chapter 7 |
|    Debtor. | ) | |
| | ) | Adversary Proceeding No. 07-1234 |
| BRIAN BASH, TRUSTEE, | ) | |
|    Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| ENDIA V. HILL, | ) | |
|    Defendant. | ) | |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the trustee's adversary complaint seeking revocation of the debtor's discharge. At a status conference on August 14, 2007, the trustee, the debtor, and the debtor's counsel appeared before the Court and reached an oral agreement under which the debtor would not contest the

---

[1] This memorandum of opinion is not intended for official publication.

trustee's complaint but would be given until February 5, 2008, to turn over the balance of funds due the trustee pursuant to an order entered on January 8, 2007. Although the agreement announced in open court on August 14, 2007, was never reduced to writing, for the reasons stated more fully below the Court finds that it is nevertheless binding. Moreover, based on the stipulations of the parties, the Court finds that the balance of funds has not been turned over. Accordingly, the trustee is entitled to an order revoking the debtor's discharge pursuant to 11 U.S.C. § 727(d) and (a)(6).

## FACTS

On October 7, 2005, the debtor-defendant filed a petition under Chapter 7 of the Bankruptcy Code, [2] and Brian A. Bash was assigned as the Chapter 7 trustee in her case. On February 2, 2006, the Court entered an order of discharge. (Case #05-28333; Docket #7). On June 20, 2006, the trustee filed a motion for turnover seeking $3,128.17, representing the nonexempt portion of the debtor's tax refund. (Docket #13). On July 18, 2006, the debtor filed a *pro se* response requesting a payment plan from the trustee. (Case #05-28333; Docket #15). On

---

[2] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

2

January 8, 2007, the Court entered an order granting the trustee's motion and ordering the debtor to turn over $3,128.17 to the trustee.

On May 31, 2007, the plaintiff-trustee initiated the above-captioned adversary proceeding by filing a complaint seeking the revocation and denial of the debtor-defendant's discharge pursuant to 11 U.S.C. § 727(d) and § 727(a)(6). On July 25, 2007, the debtor-defendant filed an answer admitting that the she had not fully complied with the order of turnover. The answer also stated that she had offered to make payments to the trustee, but no agreement had been reached. (Docket #9).

The Court held a pretrial conference on August 14, 2007. The trustee, the debtor-defendant, and her attorney all appeared. The trustee initially indicated that he was unwilling to enter into a new payment plan and would rather proceed to trial as quickly as possible. However, the debtor-defendant's attorney proposed an agreement whereby the debtor-defendant would pay the trustee $50 per month and assign her next year's tax refund to the trustee to satisfy the remaining balance. The debtor-defendant's attorney further proposed that upon the debtor-defendant's failure to comply with those terms, the trustee would file an affidavit to automatically obtain a judgment revoking the debtor's discharge without the need for a trial. When the Court asked the plaintiff-trustee whether he consented to

3

those terms he again expressed a reluctance to enter into another payment plan, but he offered an alternate agreement. The trustee proposed that the Court issue a scheduling order setting trial in January of 2008, and if the debtor-defendant paid the amount before trial, the matter would be resolved by submitting a stipulated dismissal. However, if the debtor-defendant failed to pay, the parties would enter a judgment consenting to revocation of discharge. The debtor-defendant, through her attorney, accepted this offer in open court. Thus, while the Court issued an order with a February 5, 2008, trial date, the Court, the trustee, the debtor-defendant, and her attorney all understood that no trial would be held. Rather, under the oral agreement announced in open court on August 14, 2007, the debtor-defendant would have until the trial date to pay the balance of funds due the trustee or her discharge would be revoked.

On January 28, 2008, the debtor-defendant's attorney filed a motion to withdraw as counsel, indicating that although the debtor-defendant was present at the August 14, 2007, pretrial conference, she had failed to sign the settlement stipulation and had failed to respond to counsel's telephone calls and written correspondence. On January 29, 2008, the trustee and the debtor-defendant, through her attorney, submitted the following amended joint stipulations of facts:

    1. The parties agreed at pretrial that the matter would be resolved by

trial date either through payment of the trustee's claim or entry of a revocation of discharge order. Debtor was present at the pretrial and understood this arrangement.

. . .

3. Based upon the statements at the pretrial, Debtor promised to make payment of the turnover amount to the trustee by the trial date. To date, she has not paid the turnover amount.

4. Counsel for the Debtor/Defendant has been unable to communicate with the Debtor despite repeated attempts to do so by telephone or letter regarding this matter.

5. Debtor has not paid the trustee the money owed to him and still owes the money under the turnover order.

6. Debtor's counsel has filed a motion to withdraw as counsel in this case.

7. The parties agree to submit this case for hearing solely upon these stipulations, unless otherwise required by the Court.

(Docket #16). Attached to and incorporated by the stipulations were a letter from the trustee to the debtor-defendant's attorney repeating the terms of the agreement recited in open Court on August 14, 2007, a proposed stipulated judgment entry dismissing the adversary proceeding upon full payment, and a proposed stipulated judgment entry revoking the debtor-defendant's discharge. The February 5, 2008, trial was not held, and the Court took the matter under advisement.

JURISDICTION

The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

DISCUSSION

Pursuant to stipulations, the parties have agreed to have this matter heard without a trial, unless otherwise required by the Court. Accordingly, if the Court finds that the arrangement announced in open court on August 14, 2007, is binding on the parties, given the stipulation that the balance of funds due the trustee remains unpaid, the Court must grant the relief requested by the trustee and revoke the debtor's discharge. As explained below, the Court finds that the arrangement announced in open court on August 14, 2007, is indeed binding on the parties.

" 'It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them.' " *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988), *quoting Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). "A federal court possesses this power 'even if that agreement has not been reduced to writing.' " *Brock v. Scheuner*, 841 F.2d at 154 *quoting Bowater N. Am. Corp. v. Murray Mach.*,

773 F.2d 71, 76 (6th Cir. 1985). Settlement agreements are contracts, and whether they are enforceable is " 'determined by reference to the state substantive law governing contracts generally.' " *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992), *quoting White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986).

Under Ohio law, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). The essential elements of a contract include an offer, acceptance, capacity, consideration, and a manifestation of mutual assent. *See Kostelnik*, 770 N.E.2d at 61, *citation omitted*. "An offer is the manifestation of willingness to enter into a bargain." *Garrison v. Daytonian Hotel*, 663 N.E.2d 1316, 1318 (Ohio Ct. App. 1995), *quoting* RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981). An offer remains open for acceptance until revoked or rejected. *Garrison*, 663 N.E.2d at 1318. A counteroffer acts as a rejection to extinguish all previous offers while also making a new offer. *See Garrison*, 663 N.E. 2d at 1318. "A manifestation of assent by the offeree constitutes an acceptance." 17 Ohio Jur. 3d *Contracts* § 24. "[C]onsideration may consist of either a detriment to the promisee or a benefit to the promisor." *Ford v. Tandy Transp., Inc.*, 620 N.E.2d 996, 1009 (Ohio Ct. App. 1993). Mutual assent is a

7

"meeting of the minds as to the essential terms of the contract." *Kostelnik*, 770 N.E.2d at 61.

In this case, the debtor-defendant's attorney offered an agreement whereby the debtor would make payments towards the amount owed under the turnover order and assign her interest in her following year's tax refund in exchange for the trustee's ability to file an affidavit and obtain a revocation of discharge without the need for trial in the event the debtor-defendant failed to make all payments. The plaintiff-trustee's counteroffer rejected this offer and created a new offer consisting of either a stipulated dismissal after full payment or a stipulated revocation of discharge. The attorney for the debtor-defendant accepted this offer in open court, with the consent and understanding of his client who was with him in the courtroom. The only change that the debtor-defendant's attorney requested was that the Court push the trial date back from January 2008 to February 2008. The consideration for this agreement consisted of the benefit to the debtor-defendant of over five extra months to make payments and the benefit to both parties in avoiding the extra costs of litigating this matter. Based upon the Court's review of the audio record of the August 14, 2007, pretrial, it is clear the parties had a meeting of the mind as to the essential terms of the contract which merely consisted of the opportunity for the debtor-defendant to make payments and the

ability to avoid trial. Therefore, because the parties entered into a valid settlement agreement the Court has no choice but to enforce the agreement. *See Spercel v. Sterling Indus., Inc.*, 285 N.E.2d 324, 327 (Ohio 1972) ("settlement agreement entered into between the parties in the presence of the court constitutes a binding contract"). When a settlement agreement is voluntarily entered into "it cannot be repudiated by either party and will be summarily enforced by the court." *Spercel*, 285 N.E.2d at 326. Accordingly, the Court enters judgment in favor of the plaintiff and against the debtor-defendant, Endia V. Hill, revoking the debtor's discharge.

## CONCLUSION

For the reasons stated above, the Court enters judgment in favor of the plaintiff and against the debtor-defendant, Endia V. Hill, revoking the debtor's discharge.

IT IS SO ORDERED.